IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CITY OF PHILADELPHIA, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 17-2203 |
| v. | : | |
| WELLS FARGO & CO., and | : | |
| WELLS FARGO BANK, N.A., | : | |
| Defendants. | : | |

**January 16, 2018**                                                                 **Anita B. Brody, J.**

### MEMORANDUM

On May 15, 2017, Plaintiff City of Philadelphia ("the City") filed its 52-page Complaint alleging one claim against Defendants Wells Fargo & Co., Inc. and Wells Fargo Bank, N.A. (collectively "Wells Fargo") for violating the Fair Housing Act, 42 U.S.C. §§ 36-1, *et seq*. The Complaint accuses Wells Fargo of engaging in discriminatory mortgage-lending practices against African-American and Latino residents of Philadelphia. Wells Fargo's alleged practices constitute "reverse redlining," which involves targeting minorities and minority communities with exploitive loan products that have higher costs and worse terms than those offered to similarly situated white borrowers. Compl. ¶ 7.

Publicly available loan data has been analyzed by the City to indicate the existence of "at least 1,067 discriminatory high-cost or high-risk loans issued to minority borrowers by Wells Fargo in Philadelphia between 2004 and 2014 that resulted in foreclosure." Compl. ¶ 9. These loans are concentrated in areas of the city that have high rates of poverty and significant African-American and Latino populations. *Id*. According to the City, this practice has "continue[d] through the present and has not terminated." *Id*. at ¶ 5.

1

The City alleges disparate treatment and disparate impact as theories for its FHA claim, Compl. ¶ 4, and based on those theories, the City alleges two types of injuries: non-economic and economic, *id*. at ¶ 100. For its non-economic injuries, the City alleges that Wells Fargo's conduct negatively impacts the ability of minority residents to own homes in Philadelphia, which injures the City's "longstanding and active interest in promoting fair housing and securing the benefits of an integrated community." *Id*. at ¶¶ 103-04. The City alleges that it expends resources combating housing discrimination and that Wells Fargo's actions have interfered with those efforts. *See id*. at ¶¶ 103-106. For its economic injuries, the City alleges that the discriminatory loans issued by Wells Fargo cause increases in foreclosures that diminish the City's tax revenues and increase its spending on municipal services. *Id*. at ¶ 106. To remedy its injuries, the City seeks injunctive relief and damages. *Id*. at ¶ 2.

On July 21, 2017, Wells Fargo filed a motion to dismiss and a motion to strike. ECF Nos. 25 & 26. On November 3, 2017, Wells Fargo filed a motion to stay and/or limit discovery. ECF No. 53.

I will deny all motions. The motion to dismiss and motion to stay and/or limit discovery are discussed below, and the motion to strike will be addressed in a separate order.

**STANDARD OF REVIEW**

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013), *as amended* (May 10, 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

**DISCUSSION**

**A. Motion to Dismiss**

In its 12(b)(6) motion, Wells Fargo argues for dismissal because the City's claim (1) is precluded by res judicata; (2) is time barred by the statute of limitations; (3) improperly alleges the disparate impact theory; and (4) lacks proximate cause.[1]

---

[1] Wells Fargo also argues for dismissal based on information found in the public record that it argues demonstrates that the City has not reassessed property values, which therefore means that the City could not have suffered the injury of lost tax revenues due to declining valuations. This argument fails because the public records put forth by Wells Fargo cannot be used at the motion to dismiss stage for the truth of their contents. *See Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (determining that the district court properly took judicial notice of a newspaper article for the limited purpose of showing "what was in the public realm at the time, not whether the contents of those articles were in fact true").

Here, Wells Fargo is asking the Court to determine the truth of the records it presents to hold that the City did not reassess its property values during the period of alleged discriminatory lending. Making such a determination—while resolving a motion to dismiss—is improper.

### 1. Res Judicata

Wells Fargo asserts that the City is barred from bringing its FHA claim by res judicata because its claim is duplicative of those resolved by a settlement between Wells Fargo and the Pennsylvania Human Relations Commission ("PHRC"), which was part of a 2012 Department of Justice Consent Decree ("2012 DOJ Consent Decree"). Def.'s Mem. 4, ECF No. 25-1.

For res judicata to apply under Pennsylvania law,[2] the current action and a prior litigation must share each of the following: (1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued. *Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1189–90 (Pa. 2012).[3] "The doctrine of res judicata applies to and is binding, not only on actual parties to the litigation, but also to those who are in privity with them." *Stevenson v. Silverman*, 208 A.2d 786, 788 (Pa. 1965).

Wells Fargo argues that the PHRC acted in the City's interest in bringing its claims, and therefore, the City was in privity with the PHRC and is precluded by the settlement from bringing its current claim. Wells Fargo's res judicata argument fails at a motion to dismiss, because it cannot meet its burden of establishing privity between the City and the PHRC.

For purposes of res judicata, privity applies when different parties would be "vicariously responsible for the conduct of another, such as principal and agent or master and servant."

---

[2] "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

[3] The defendant carries the burden of proving the elements of claim preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). At the motion to dismiss stage, a res judicata defense fails unless the predicate establishing the defense is apparent from the face of the complaint. *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Nevertheless, as noted in the footnote above, public records can supplement a 12(b)(6) motion, but only to show the existence of the record or matter. *See Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006).

*Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 n.11 (3d Cir. 2006) (applying Pennsylvania law) (quoting *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1317 (Pa. Super. Ct. 1983)). However, there is "no prevailing definition of 'privity' which can be applied automatically to all cases." *Day*, 464 A.2d at 1317. "[P]rivity 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include the other within the res judicata.'" *Myers v. Kim*, 55 Pa. D. & C.4th 93, 100 (Com. Pl. 2001) (quoting *EEOC. v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)). Without identity of parties or privity, res judicata will not apply.

Here, Wells Fargo cannot meet its burden of proving the elements of res judicata because neither the Complaint nor public records establish identity of parties in the actions or privity between the City and the PHRC. The City mentions the 2012 DOJ Consent Decree with Wells Fargo in its Complaint and states that it was based on allegations of discrimination that took place in "metro areas including Philadelphia." Compl. ¶ 56. The PHRC settlement is attached to Wells Fargo's Motion to Dismiss as an exhibit. *See* Def.'s Mem. Ex. E, ECF No. 25-6. However, the mention of the settlement in the Complaint and the mere existence of the settlement itself fail to show privity because neither necessarily indicates a close relationship between the City and the PHRC.[4] Thus, Wells Fargo cannot meet its burden of proving res judicata at this stage of the litigation.

### 2. Statute of Limitations

Wells Fargo claims that the City is time barred from bringing its claims because it fails to properly allege a discriminatory loan within the statute of limitations period.

---

[4] Any further examination of the underlying facts would require the motion to dismiss to be converted to a motion for summary judgment, *Rycoline Prod., Inc.*, 109 F.3d at 886, an action that the Court is not taking.

For a defendant to prevail on a statute of limitations argument at the motion to dismiss stage "the plaintiff's tardiness in bringing the action must be apparent from the face of the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010) (citing *Robinson v. Johnson*, 313 F.3d 128, 135 & n. 3 (3d Cir. 2002)).

The FHA requires that a civil enforcement action must be filed "not later than 2 years after the occurrence *or the termination of* an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). The phrase "or the termination of" codifies the continuing violation doctrine; allowing a plaintiff to bring an FHA claim to challenge conduct outside of the two year period so long as one incident of that conduct occurred within the limitations period. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).

Therefore, for Wells Fargo to succeed in its statute of limitations argument, it must show that the City fails to allege any violative conduct after September 23, 2014.[5] The City does, in fact, allege six discriminatory loans after that date, Compl. ¶¶ 134-35, and there is nothing on the face of the complaint to indicate the City's claims are time barred. Therefore, the City properly alleges a continuing violation, and Wells Fargo's statute of limitation argument fails at this stage.

### 3. Disparate Impact[6]

Wells Fargo argues that the City fails to properly allege disparate impact because it does not allege a specific, race-neutral policy causally connected to the alleged disparity in lending. To properly allege a disparate impact FHA claim, the plaintiff must identify a specific policy implemented by the defendant that causes a racial disparity. *See Texas Dep't of Hous. & Cmty.*

---

[5] In this case, due to an agreement by the parties, the two year period extends back to September 23, 2014. Def.'s Mem. 3 n.5, ECF No. 25-1.

[6] This is Wells Fargo's only argument that solely goes to the City's disparate impact theory. All of Wells Fargo's other arguments apply to both the City's disparate impact and disparate treatment theories.

*Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2523 (2015). The requisite racial disparity can be shown through facts or statistical proof. *See id.*

Here, the City plausibly alleges disparate impact under the FHA. The City identifies at least seven specific policies—derived from Confidential Witness statements—that led to disparate impacts in Wells Fargo's mortgage lending. Compl. ¶¶ 40-51. Then, the City uses statistical analysis to allege that, under these policies, African-American and Latino borrowers with FICO credit scores above 660 were more than twice as likely to be issued a high-cost or high-risk loan when compared to a similarly situated white borrower. Compl. ¶ 70.[7]

Wells Fargo also argues that the City's disparate impact claim fails because Wells Fargo's policies involve employee discretion, and policies of discretion are inadequate bases for a disparate impact claim. However, a policy that gives a defendant's employees discretion *can* be the basis for a disparate impact claim. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011) ("[G]iving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory. . . .") (citing *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 990-91 (1988)). Hence, the fact that some of the specific policies involve discretion by Wells Fargo employees does not foreclose the City's disparate impact claim. Thus, the City adequately alleges disparate impact. *See Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 966-67 (N.D. Ill. 2015) (denying a motion to dismiss similar FHA disparate impact claims).

### 4. Proximate Cause

Wells Fargo contends that the City failed to allege proximate cause between a possible FHA violation and any injuries that the City may have suffered. The City, however, sufficiently

---

[7] Without controlling for credit score, an African-American borrower was 2.102 times more likely to receive a high-cost or high-risk loan and a Latino borrower was 1.655 times more likely as compared to a similarly situated white borrower.

alleges proximate cause for its non-economic injuries in its FHA claim. Claims under the FHA require that the alleged injuries by plaintiffs are proximately caused by the statutory violation. *See Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017). "Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014)). "[S]ome direct relation between the injury asserted and the injurious conduct" is required. *Id.* at 1306 (quoting *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992)).

Although the precise "boundaries of proximate cause under the FHA" remain undefined, s*ee id*. at 1306,[8] the Supreme Court has provided enough guidance to determine whether the City has "adequately alleged proximate causation" at the motion to dismiss stage, *see Lexmark Int'l, Inc.*, 134 S. Ct. at 1394. At the motion to dismiss stage, a plaintiff must only show "plausible" proximate cause. *See, e.g.*, *Cty. of Cook v. Bank of Am. Corp.*, 181 F. Supp. 3d 513, 519-20 (N.D. Ill. 2015) (finding causation—for claims that mirror those in this case—to be "at least plausible"); *In re Le-Nature's, Inc., Commercial Litig.*, No. 9-CV-469, 2010 WL 11469939, at *4 (W.D. Pa. May 13, 2010) (denying a motion to dismiss because the complaint alleged enough to "suggest proximate cause"); *Regscan, Inc. v. Brewer*, No. Civ.A.04-6043, 2005 WL 2039180, at

---

[8] The Supreme Court has recently left the task of defining those precise boundries to the lower courts. In *City of Miami*, Miami brought very similar claims to those brought in this case by Philadelphia, and one of the issues presented was whether Miami's allegations satisfied the element of proximate cause. *Id.* at 1300-01. The Court explicitly avoided providing a "precise" standard for proximate cause under the FHA, and it remanded the case for the lower courts to determine the standard and whether Miami's claims met it. *Id.* at 1306. The case is currently pending before the Eleventh Circuit. *See City of Miami v. Bank of America Corp.*, No. 14-14543 (11th Cir. Oct. 8, 2014); *see also City of Miami v. Wells Fargo & Co.*, No. 14-14544 (11th Cir. Oct. 8, 2014).

8

*3 (E.D. Pa. Aug. 23, 2005) (denying a motion to dismiss when the claim "arguably" established proximate cause).

The City has shown plausible proximate cause by alleging a connection between Wells Fargo's lending practices and the non-economic injuries to the City based on its goal of promoting fair housing as part of an integrated community. As a preliminary matter, non-economic injuries of this nature are generally cognizable under the FHA. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376-77 (1982) (finding injury for the loss of social and professional benefits of living in an integrated society); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 111 (1979) (finding that a municipality was injured by being robbed of its "racial balance and stability"); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209–10 (1972) (finding an injury to apartment tenants for the "loss of important benefits from interracial associations").

Non-economic injuries are especially cognizable when, as here, resources are allegedly spent by a plaintiff to combat the non-economic harm. *See Havens Realty*, 455 U.S. at 379 (finding a nonprofit to be injured because defendant's actions frustrated its efforts to promote fair housing and because the nonprofit had to spend resources to counteract the effects of the defendant's actions); *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 76 (3d Cir. 1998) ("*Havens* made clear that where discriminatory 'practices have perceptibly impaired [an organization's ability to carry out its mission], there can be no question that the organization has suffered injury in fact.'" (quoting *Havens Realty*, 455 U.S. at 379)). Here, the City has alleged spending on programming that addresses problems created by Wells Fargo's actions. *See* Compl. ¶¶ 103-106.[9]

---

[9] Wells Fargo argues that the City has not alleged the "specific action[s] to counteract defendant's acts of discrimination" required to establish a "frustration-of-mission" injury. *See* Def.'s Reply 6-8. This argument fails because Wells Fargo misstates the standard to show a non-

9

The connection between Wells Fargo's alleged practices and the City's non-economic injuries is plausible because there is some direct relation between discriminatory lending and the harms to the City's goals of fair housing and an integrated community. This relation is plausible for two reasons.

First, discrimination in lending causes injury to the goal of integrated communities by negatively impacting the ability of minorities to purchase homes. The ability to obtain a loan is directly tied to the ability to own a home. *See* Robert G. Schwemm & Jeffrey L. Taren, *Discretionary Pricing, Mortgage Discrimination, and the Fair Housing Act*, 45 Harv. C.R.-C.L. L. Rev. 375, 433 (2010) ("Mortgage lending has always been the gateway to the American Dream of homeownership . . . ."). Minority borrowers that are given higher risk or higher cost loans than similarly situated white borrowers are forced to pay higher actual costs, reducing their purchasing power and limiting their options. Such discriminatory lending inevitably affects the demographic texture of the City and its communities, allowing race to negatively impact homeownership. The City has alleged a statistically significant relationship between a borrower's race and receiving a high-risk or high-cost loan from Wells Fargo, Compl. ¶ 69-70, and the mere existence of discriminatory lending causes harm to the City's goal of promoting fair housing and integrated communities.

Second, discrimination in lending causes harms to integrated communities by reducing overall minority homeownership, because if a minority borrower is provided a high-risk or high-

---

economic injury at the motion to dismiss stage and instead gives the standard closer to that for summary judgment. *See Fair Hous. Council of Suburban Phila.*, 141 F.3d at 76 ("In order to defeat the *summary judgment motion* based on the issue of standing, the [plaintiff] was required to submit 'affidavits or other evidence showing *through specific facts* ... that ... it [was] "directly" affected [by the alleged discrimination].'" (emphasis added) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).

cost loan, then the loan is more likely to end in an inability to purchase property or, once property is purchased, to avoid foreclosure. Based on a regression analysis of Wells Fargo loan data, the City alleges that a high-cost or high-risk loan made to an African-American borrower was 4.147 times more likely to result in foreclosure than a regular loan made to a similarly situated white borrower. Compl. at ¶ 95. Under the same criteria, a high-cost or high-risk loan made to a Latino borrower was 2.641 times more likely to result in foreclosure. *Id*. Thus, the City has plausibly pled that discriminatory lending causes a higher rate of foreclosures against minority borrowers, which harms the City by reducing diversity in homeownership and by hindering fair housing and the furtherance of stable, integrated communities.

Because the City plausibly pleads proximate cause for its non-economic injuries, the question of whether it also adequately pleads proximate cause for its economic injuries need not be reached at this juncture. The Court admittedly has serious concerns about the viability of the economic injury aspect of the City's claim with regard to proximate cause. Nevertheless, Wells Fargo has not met its burden to show why the City's *entire* FHA claim should be dismissed. Therefore, the case will proceed to discovery with the intent of first determining whether Wells Fargo has caused non-economic harms to the City by violating the FHA and whether that violation is ongoing. *See Havens Realty*, 455 U.S. at 363 n.16 ("[A]s long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed." (quoting *Gladstone*, 441 U.S. at 103 n.9)).

Wells Fargo's motion to dismiss will be denied without prejudice to raise the issues at a later stage of the litigation.

**B. Motion to Stay and/or Limit Discovery**

Wells Fargo has filed a two-part motion (1) to stay discovery pending resolution of the motion to dismiss and (2) to limit the first round of discovery to the statute of limitations time period. The first part of the motion—to stay discovery—is denied because the discovery stay is now moot upon entry of this order denying Wells Fargo's motion to dismiss.

The second part of Wells Fargo's motion—to limit discovery—is also denied. Wells Fargo contends that discovery should be limited on the basis that if the City cannot first show a violation of the FHA within the statute of limitations period then its claim fails as a continuing violation. That logic is sound, but such a strict limit on discovery potentially denies the City sufficient data, as alleged, to prove its claim.

The City has adequately alleged an FHA claim based on a continuing violation of a disparate impact. After alleging a continuing violation of a disparate impact, a plaintiff must be given the opportunity to prove whether a defendant had a policy that caused a racial disparity, *see Inclusive Communities*, 135 S. Ct. at 2523, and whether the policy continued to cause a racial disparity into the limitations period, *see Havens Realty*, 455 U.S. at 380-81. If Wells Fargo had caused a disparate impact with its policies prior to the statute of limitations period, and it continued to cause a disparate impact into the limitations period, then the City's continuing violation claim is timely.

The intersection of the continuing violation theory and the statistical nature of the City's disparate impact claim demonstrates why discovery must extend—at the very least—well beyond the limitations period. As it outlines, the City will likely need to use large amounts of aggregated loan data to prove its case. Thus, it will need loan data from well prior to the limitations period to show whether Wells Fargo's policies caused a disparate impact that

continued into the two-year window. The City must be able to view the whole picture of the alleged continuing violation. Therefore, the City must, at least, be given the opportunity to examine a longer range of time than two years to determine whether there was an FHA violation that continued into the limitations period.

**CONCLUSION**

Based on the above reasoning, I will deny Wells Fargo's motion to dismiss and motion to stay and/or limit discovery.

                                              s/ Anita B. Brody

                                        _____

                                        Anita B. Brody,      J.