IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF PHILADELPHIA,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>WELLS FARGO & CO, and WELLS FARGO BANK, N.A.,<br><br>　　　　　　Defendants. | CIVIL ACTION NO.<br>2:17-cv-02203-AB |

**[PROPOSED] STIPULATED ORDER REGARDING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

This Stipulated Order Regarding the Production of Documents and Electronically Stored Information shall govern the parties' document productions in the above-captioned case. To the extent any party identifies issues that it contends make compliance with any of the provisions of this Order impossible or overly burdensome, the parties shall meet and confer regarding an appropriate and reasonable alternative.

**I.　PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in the above-captioned case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**II.　COOPERATION**

The parties are aware of the importance and the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**III.    DEFINITIONS**

   A.    **"De-NIST"** means to use the National Software Reference Library's list of known, traceable computer applications to identify computer files known to be unimportant system files and remove them from the document collection. Examples of such files include, without limitation, .exe and .dll files found on a PC

   B.    **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations as those terms are used in Fed. R. Civ. P. 34 — stored in any medium from which information can be obtained.

   C.    **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind and has the same meaning and scope as it has in the Federal Rules of Civil Procedure.

   D.    **"Email Thread Suppression"** means to identify the last, most-inclusive email in a chain of emails for review without reviewing earlier emails in the same chain. For clarity, side conversations from an email chain (*i.e.*, emails that do not include all senders and recipients in the chain), may not be removed from review or production as part of any Email Thread Suppression effort without meeting and conferring with the opposing party.

   E.    **"Native data format"** means the file in its original creating application, *i.e.*, including the format in which the producing party has maintained ESI in the ordinary course of business.

   F.    **"Metadata"** means and refers to information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, and/or usage of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information

technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. The specific Metadata fields are set forth in section IV.M.

G. "**Static Image**" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

H. "**Media**" means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

## IV. FORMAT OF PRODUCTION

A. **TIFF Image Files**. The Parties agree that all ESI will be produced as single-page, black-and-white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth, except as provided in section II.H. Each image file shall be of the form: <Bates num>.tif where <Bates num> is the BATES number of the page. Original document orientation as displayed in the native file should be maintained in the TIFF image (*e.g.*, portrait to portrait and landscape to landscape).

B. **Text Files**. Accompanying these TIFF files shall be single page text (.TXT) files (*i.e.*, one text file per TIFF image created as set forth in IV.A) containing searchable text from the native file for nonredacted documents and OCR text for documents that have been redacted. Each filename shall be of the form: <Bates num>.txt where <Bates num> is the BATES number endorsed on the TIFF image to which the text file pertains. Text shall be encoded in UTF-8. Load files of the static images should be created and produced together with their associated static images to facilitate the use of the produced images by a document management or litigation support database system. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

**C.     Production of Structured Data**. All data collected from structured data sources should be produced in a reasonably useable format. If a party believes it cannot produce the data in a reasonably useable format, the parties will meet and confer regarding an appropriate format.

**D.     Production of Physical Documents**. Documents or records that either were originally generated as ESI but now only exist in physical hard-copy format, and documents or records that were originally generated in hard-copy format, shall be converted to a single page .TIFF file and produced following the same protocols set forth herein, except the metadata fields provided will be only: Custodian; Beginning Bates, Ending Bates, BegAttach, EndAttach, and FileName (where available). OCR will be provided for such documents. If, however, the Disclosing Party identifies documents or records for which OCR would be overly burdensome, the parties shall meet and confer regarding an appropriate and reasonable alternative.

**E.     Native Files**. In accordance with section IV.A, the parties agree that Documents shall be produced as TIFF images. The exception to this rule shall be presentation-application files (*e.g.*, MS PowerPoint), spreadsheet-application files (*e.g.*, MS Excel), personal databases (*e.g.*, MS Access), photographs, Portable Document Format (PDF) files, and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi files), for which all ESI items shall be produced in native format. Each native file shall be of the form: <Bates num>.ext where <Bates num> is the BATES number of the document and .ext is the original native file extension. In the event a Document subject to this paragraph requires redaction, it shall be produced in TIFF in accordance with paragraph IV.I below. If upon review the receiving party believes the production of an above-listed document in TIFF is inadequate, it shall meet and confer with the producing party regarding whether an alternate method of redaction would be appropriate.

**F.     Document Unitization**. All productions will include data load files and image load files. Each party will designate its preferred format for receiving production documents. The image load file shall reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file shall match the total number of image files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.

Format for both plaintiff and defendant productions:

**OCR and Extracted Text Files** (**.TXT Files**):

- Single text file per document containing all the document's pages
- Filenames should be of the form:

  &lt;Bates num&gt;.txt

  Where &lt;Bates num&gt; is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

**Images Files:**

- Single page per image
- Single image per file
- TIFF is default FORMAT unless the following formats are agreed to: jpeg, jpeg2000, giff, png, single image tiff, and bmp
- Filenames should be of the form:

  &lt;Bates num&gt;.&lt;ext&gt;

  Where &lt;Bates num&gt; is the BATES number of the page, and &lt;ext&gt; is the

  appropriate extension for the image format (.jpg, .tif, .png, etc)

**Index Files:**

- DAT files (separated by standard Concordance delimiters)
- First line must contain the column/field names (set forth in Section II.L herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8
- Values must be enclosed by Concordance standard delimiters

**Native Index Files**:

- DAT files
- All lines contain data – first row must NOT contain column headers.
- Every row must have 2 columns/fields (empty values are NOT acceptable)
- First column/field must contain the BATES number for the document
- Second column/field must contain the filename (NOT the full path) of the native file. Filenames must be unique in the production – unless the content is identical (for example, a native and an OCR text file may both be named XYZ01234567.TXT if they are identical).
- Text must be encoded in UTF-8
- Values must be enclosed by double quotes (ascii character 34)
- Values must be separated by standard Concordance delimiters

G. **Duplicates**. Removal of duplicate documents shall be performed but shall only be done on exact duplicate documents across custodians and centralized files (based on MD5 or SHA-1 hash values at the document level). To the extent that the de-duplication functionality of a party's processing system fails to remove certain types of duplicates such as the sent and received versions of the same email based on this provision (*e.g.*, because the time stamp differs by a second), the parties may meet and confer on a supplemental de-duplication process to address such issues as they arise. In any event, duplicate documents will not be removed if they

are attached to unique family members (*e.g.*, where two different e-mails are attached to the same document, the MD5 Hash duplicate attachment will not be removed, as it is attached to different cover e-mails). The producing party shall provide a "AllCustodian" field for each document produced and that field shall include every custodian who had that document in their custodial files, but where the document was deduplicated during processing.

**H.**     **De-NISTing**

The parties may de-NIST collected ESI prior to review for production using the current list of system files maintained by the National Software Reference Library.

**I.**     **Color**. For files not produced in their native format, if an original document contains color, the producing party may produce black and white image(s). At the request of the receiving party, the parties shall meet and confer to discuss production of color image(s) for specific documents.

**J.**     **Bates Numbering and Other Unique Identifiers**. For files not produced in their native format, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the bottom right hand corner of the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of the Protective Order for Confidential Information entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in a Protective Order, or materials redacted in accordance with applicable law or Court order, a designation may be "burned" onto the document's image at the bottom left hand corner of the page or on top of the redacted text. Each party should use a different production prefix.

For any ESI produced in native data format, the producing party shall produce a single-page TIFF slipsheet indicating that a native item was produced and reflecting the production Bates number, any confidential designation and text stating "Document Produced in Native Format." The native file will be produced in searchable format, preferably in extracted text.

In cases where documents to be provided in native format are to be redacted and cannot be imaged in a readable manner (*e.g.*, Excel spreadsheets), the producing party may redact the information from the native version of the document (but keeping a pristine non-redacted image intact and preserved) by replacing the redacted text in the appropriate columns, cells, or locations with the words "Redacted-Privileged" or "Redacted-Confidential", as appropriate. If a party performs redactions on native copies of documents, it will notify the receiving party of the Bates numbers of the documents redacted in this manner.

**K.     Production Media**. The Parties shall produce all documents via either a secure FTP site or encrypted physical media (*e.g.*, hard drives, CDs, or DVDs) or other mutually agreeable media ("Production Media"). Each item of Production Media shall include: (1) text referencing that it was produced in this lawsuit (2) the production date, (3) the production volume for the party; and (4) the Bates number range of the materials contained on such Production Media item. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

**L.     Electronic Text Files**. Text files for nonredacted produced documents shall be produced reflecting the full text that has been electronically extracted from the original, native electronic files ("Extracted Text"). The Extracted Text shall be provided in UTF-8 text format

and shall be labeled and produced on Production Media in accordance with the provisions of paragraph IV.K above, "Production Media". The text files will be named with the unique Bates number of the first page of the corresponding document followed by the extension ".txt." with the relative pathing to these text files included in the "index file" on the production media.

**M.** **Metadata**. The Metadata fields identified below will be extracted and produced (to the extent reasonably available) in a flat delimited text file or .dat format with values enclosed by Concordance standard delimiters:

- Application Name;
- AttachCount (number of attachments);
- Beginning Bates Document Number;
- Ending Bates Document Number;
- BegAttach (the Beginning Bates Document Number of the parent document);
- EndAttach (the Ending Bates Document Number of the last attachment);
- Conversation Index;
- Custodian;
- Confidentiality designation;
- FileExt (the extension of the filename, e.g., "DOC" for an MS Word document);
- Filename (the original filename);
- Folderpath;
- FileSize (in KB);
- Date Created
- Time Created (to the degree such information is reasonably available using "Robocopy" or similar software);
- Date and Time Last Modified;
- Author;
- To/From/Cc/Bcc fields;
- Date Sent
- Time Sent;
- Date Received
- Time Received;
- Time Zone Processed (time zone set during data processing);
- Email Subject;
- MD5 Hash;
- MessageID (message ID of the email header);
- Page Count;
- Path to Extracted Text files;
- Path to Native files;
- Source Party (if different from Custodian);

9

- Author;
- Redacted;
- Volume (indicative of production volume); and
- Last Saved By

The parties are not obligated to populate manually any of these fields if such fields cannot be extracted from a document, with the exception of the production-based fields, e.g., Custodian (which shall be populated by the producing party to the extent that a custodian can be identified and in accordance with section IV.G above), Attach Count, Beginning Bates Document Number, Ending Bates Document Number, BegAttach, EndAttach, Confidentiality Designation, etc.

**N.    Attachments**. Email attachments and embedded files or links must be mapped to their parent by the inclusion of the BegAttach and End Attach fields. The BegAttach field should list the first page of the parent document and the End Attach filed should list the last page of the last attachment.

**O.    Compressed Files**. Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**P.    Search and review technologies.**  The parties will notify each other in advance if they intend to use any software, techniques or technology, such as predictive coding or technology assisted review or "TAR"  or e-mail thread suppression to remove documents from the review population and provide details of the software, techniques or technology and the work flow process for the same. The parties will meet and confer in advance to mutually agree about the deployment of such software, techniques or technology, the protocol and the work flow process, and in the absence of agreement, may seek relief from the Court.

Q. **Hidden text**: ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon request, a producing party will produce files with any such information in native format.

V. **OBJECTIONS TO ESI PRODUCTION**

A. For responsive files not produced in their native format, documents that present imaging or format production problems shall be promptly identified by the producing party and disclosed to the requesting party; the parties shall then meet and confer to attempt to resolve the problems.

B. If either party objects to producing the requested information on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, and before asserting such an objection, the producing party will inform the requesting party of the format in which it is willing to produce it, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested form of production would impose an undue burden or is unreasonably costly, and afford the requesting party opportunity to propose an alternative means of compliance with the request. Such proposal may include alternative cost estimates for ESI discovery production, may offer a proposal for ESI discovery cost allocation, or both. Notwithstanding anything contained herein to the contrary, a producing party shall not produce ESI in a format not requested or designated by the requesting party unless (i) the parties have met and conferred, and, having been unable to resolve such format production conflict at such meet and confer session, (ii) prior to referral to and resolution of such issue by the court.

**C.** ESI of Limited Accessibility. If a Producing Party contends that any responsive ESI, excluding back-up tapes or other long-term storage media that were created for use as a disaster recovery mechanism, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, an estimate of the likely costs that might be incurred in producing such ESI, the method used for storage of ESI (for example, the type of system used to store the ESI), and where such ESI is kept. The parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court, who shall determine what burden may be imposed upon the Producing or Requesting Parties to resolve the dispute and whether or to what extent the costs of such production shall be borne by the Producing or Requesting Parties.

**VI.     CATEGORIES OF ESI DISCOVERABLE ONLY UPON A SHOWING OF GOOD CAUSE**

The following categories of ESI are discoverable only upon a showing of good cause: (1) "deleted," "slack," "fragmented," or "unallocated" data on hard drives; (2) random access memory (RAM) or other ephemeral data; (3) on-line access data such as temporary internet files, history, cache, cookies, etc.; (4) data in metadata fields that are frequently updated automatically, such as last-opened dates (such category expressly excludes all metadata fields set forth in section IV.M.; and (5) backup data that is substantially duplicative of data that is more accessible elsewhere.

## VII. MISCELLANEOUS

**A.** Nothing herein shall be construed to affect the discoverability or admissibility of any Document or data. All objections to the discoverability or admissibility of any Document or data are preserved and may be asserted at any time.

**B.** The enumeration of a protocol for the production, processing, or treatment of ESI in any particular format or from any particular source of ESI shall not be construed as a concession that such formats or sources of ESI contain reasonably retrievable or relevant data or that they must be searched in response to the document requests or in response to any particular document request.

**C.** This Stipulated Order is not intended to govern any protections or restrictions related to the production of privileged litigation material. The Parties have separately addressed the process for handling the production of privileged litigation materials in the Stipulated Protective Order.

**D.** Limited 28 U.S.C. § 1920 Waiver. While neither party is taking a position in this document that e-discovery costs under 18 U.S.C. § 1920 are taxable or not, the parties agree that if a party seeks e-discovery costs under 18 U.S.C. § 1920, that party will not seek the reimbursement of any costs relating to the production, storage, and maintenance of the ESI produced by that party in TIFF format over native format.

Agreed to as to form and substance this 20th day of February, 2018:

/s/ Sherrie R. Savett
Sherrie R. Savett (PA ID 17646)
ssavett@bm.net
Sarah Schalman-Bergen (PA ID 206211)
sschalman-bergen@bm.net
Patrick F. Madden (PA ID 309991)
pmadden@bm.net
Christina M. Black (PA ID 323781)
cblack@bm.net
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Rachel Geman (*pro hac vice*)
rgeman@lchb.com
Daniel E. Seltz (*pro hac vice*)
dseltz@lchb.com
John T. Nicolaou (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
212-355-9500

Robert Peck (*pro hac vice*)
robert.peck@cclfirm.com
**CENTER FOR CONSTITUTIONAL LITIGATION, P.C.**
50 Riverside Boulevard, Suite 12A
New York, NY 10069
202-944-2874

Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
**SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
310-396-0731

/s/ Alexander D. Bono
Alexander D. Bono (PA 25845)
Michael S. Zullo (PA 91827)
Lynne E. Evans (PA 313479)
William Shotzbarger (PA 320490)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000
abono@duanemorris.com
mszullo@duanemorris.com
leevans@duanemorris.com
wshotzbarger@duanemorris.com

Paul F. Hancock (admitted *pro hac vice*)
Olivia Kelman (admitted *pro hac vice*)
**K&L GATES LLP**
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131-2399
Tel: (305)539-3378
Paul.Hancock@klgates.com
Olivia.Kelman@klgates.com

Andrew C. Glass (admitted *pro hac vice*)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Tel: (617) 261-3107
Andrew.glass@klgates.com

***Attorneys for Defendant Wells Fargo Bank, N.A. and Wells Fargo & Co.***

Joel Liberson (*pro hac vice*)
joel@taresources.com
**TRIAL & APPELLATE RESOURCES**
3655 Torrance Blvd., 3rd Floor
Torrance, CA 90503
(917) 848-3218

Sozi Pedro Tulante, City Solicitor
Marcel S. Pratt, Chair, Litigation Group
Eleanor N. Ewing, Chief Deputy Solicitor
Benjamin H. Field, Deputy City Solicitor
**CITY OF PHILADELPHIA LAW DEPARTMENT**
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5000
sozi.tulante@phila.gov
marcel.pratt@phila.gov
eleanor.ewing@phila.gov
benjamin.field@phila.gov

*Attorneys for Plaintiff City of Philadelphia*

IT IS SO ORDERED.

DATED: _____, 2018     _____
                                          HONORABLE ANITA BRODY
                                          UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2018, a true and correct copy of this **[PROPOSED] STIPULATED ORDER REGARDING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** was served by via the United States District Court CM/ECF system on all persons requiring notice.

By: /s/*Sherrie R. Savett*