# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF PHILADELPHIA,<br><br>    Plaintiff,<br><br>    -against-<br><br>WELLS FARGO & CO, and WELLS FARGO BANK, N.A.,<br><br>    Defendant. | CIVIL ACTION NO.<br>2:17-CV-02203-AB |

**CITY OF PHILADELPHIA'S RESPONSE TO WELLS FARGO'S MOTION TO SET A PHASE ONE DISCOVERY TIME PERIOD**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1
II. ARGUMENT ....................................................................................................................... 3
    A. Wells Fargo's Motion Improperly Seeks Additional Review and Reconsideration of the January 16 Order and Must be Denied. ............................ 3
    B. Even If Wells Fargo's Motion Were Proper, Each of Its Arguments Fails. .......... 4
        1. The Time Period At Issue Is Clearly Relevant. ........................................ 4
        2. Wells Fargo Does Not Even Attempt to Show Burden. ........................... 8
        3. Wells Fargo's Case Law Is Inapposite ...................................................... 9
III. CONCLUSION ................................................................................................................. 10

## I.     **INTRODUCTION**

On February 19, 2018, Wells Fargo & Co and Wells Fargo Bank, N.A.'s ("Wells Fargo's") filed a motion to limit the temporal scope of Phase One discovery to the four-year period between 2012 and 2016.[1]  As Plaintiff City of Philadelphia ("City") demonstrates herein, the Motion should be denied for two independently sufficient reasons:  it is an improper motion to reconsider, and it is a premature and unsupported attempt to foreshorten Plaintiff's discovery to less than a third of the liability period in this case.

*First*, Wells Fargo's Motion is an untimely and flawed motion to reconsider.  Wells Fargo seeks to relitigate issues Wells Fargo already lost.  This Court already has held that "the City properly alleges a continuing violation, and Wells Fargo's statute of limitation argument fails at this stage."[2]  The Court also already has held that "**[**t]he intersection of the continuing violation theory and the statistical nature of the City's disparate impact claim demonstrates why discovery must extend—*at the very least*—well beyond the limitations period." *Id.* at 12 (emphasis added).  In that ruling and the Court's Discovery Order, Dkt. No. 60, the Court unambiguously established two phases for this litigation, bifurcated as to non-economic injuries and economic injuries, and not by time period.  The question of whether the City has brought timely claims and whether it has adequately alleged a continuing violation has been decided.

Rather than timely asking the Court to reconsider that Discovery Order, Wells Fargo waited a month to file its Motion, styling it as a new discovery motion and failing to seek reconsideration at all.  And, in that guise, Wells Fargo seeks to limit the City's ability to take

---

[1] *See* Wells Fargo's Motion to Set a Phase One Discovery Time Period of Twice the Applicable Statute of Limitations to Allow Discovery into Relevant Background Events ("Motion").  Dkt. No. 64.
[2] Jan. 16, 2018 Memorandum Opinion Denying Motion to Dismiss and Motion to Stay and/or Limit Discovery ("Jan. 16 Order"), Dkt. No. 57, at 6 (emphasis added).

discovery as to clearly relevant information.  Wells Fargo has no new law and no facts this Court overlooked, and thus no basis for reconsideration at all.

*Second*, even if this Motion were procedurally proper, it should be denied on the merits because it is premature and unsupported.  It is premature because Wells Faro seeks to litigate discovery issues unconnected to particular requests.  It shows no burden to producing discovery outside of the arbitrarily determined period of four years, only approximately one-third of the liability period.  It shows no burden at all, let alone an undue burden, to an even broader time for discovery—for example, it describes a "seismic shift" in 2008, yet doesn't explain why discovery should therefore (under its own reasoning) date back to two or three years prior to that event, to 2005 or 2006 or so.  Wells Fargo's arguments are in sharp contrast to the facts in the limited (and generally inapposite) case law on which it relies.  The City maintains that its requests are neither overbroad nor unduly burdensome; nonetheless, one thing is clear – Wells Fargo's motion to foreclose *all* discovery pre-2012, unconnected to a showing about *any* discovery in particular, is premature and overbroad.

Finally, the Motion is unsupported because, contrary to Wells Fargo's contention, this ruling is consistent with ample authority in civil rights cases that permit even *pre*-liability discovery—the equivalent here being before 2004, which the City is not seeking.  Conversely, Wells Fargo identifies no authority for its position that a plaintiff who has properly alleged a continuing violation cannot seek *any* discovery for the majority of the period of those violations.[3]

---

[3] Wells Fargo argues that discovery pre-dating 2012 is not relevant because (according to its self-serving and merits-based argument) it changed its lending practices.  Yet Wells Fargo ignores the core claim that it has engaged in discriminatory lending by giving African Americans and Latinos costlier and worse loans relative to comparable non-Hispanic whites continuously

*Footnote continued on next page*

## II.     ARGUMENT

### A.     Wells Fargo's Motion Improperly Seeks Additional Review and Reconsideration of the January 16 Order and Must be Denied.[4]

As an initial and dispositive matter, the Court has already ruled on the temporal scope of discovery in denying Wells Fargo's request to bifurcate discovery and require the City to prove the timeliness of its Complaint based on a narrow time period before proceeding to full-fledged discovery. Dkt. No. 57. Having lost its motion to limit discovery to two years, Wells Fargo simply changed the time period from two to four years and now seeks to renew its motion.

This re-packaging does not cite new law (there is none) and is devoid of any argument that the Court overlooked anything (which it did not). Wells Fargo's motion is nothing more than an untimely and facially inadequate motion for reconsideration. *See* Local Rule 7.1(g) (14 days to move to reconsider). *See generally United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016) ("Motions for reconsideration are granted only 'sparingly because of the interests in finality and conservation of scarce judicial resources.'") (quoting *Pa. Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992)). As the *Cephalon* case held:

> The moving party's "mere disagreement" with the Court's decision is not grounds for reconsideration. *Meachum v. Temple Univ. of the Commw. Sys. of Higher Educ.*, 56 F. Supp. 2d 557, 557 n.2 (E.D. Pa.1999), citing *Bermingham v. Sony Corp.*, 820 F. Supp. 834, 856 (D.N.J. 1992). The moving party bears a substantial burden, which cannot be satisfied through "recapitulation of the cases and arguments considered by the court before rendering its original decision." *Young Jewish Leadership Concepts v. 939 HKH Corp.*, No. 93–2643, 1994 WL 184410, at *1 (E.D. Pa. May 10, 1994), citing *Starr v. J.C.I. Data Processing, Inc.*, 767 F. Supp. 633, 635 (D.N.J. 1991). "[A] motion for reconsideration 'addresses only factual and legal matters that the Court may have

---

*Footnote continued from previous page*
through the present even while it has adapted to changing market conditions. *See, e.g.*, Compl., ¶ 5. As shown below, Wells Fargo's declarants, if anything, actually bolster the City's claims.
[4] Wells Fargo has also sought certification under 28 U.S.C. §1292(b) of some of the same issues that are intertwined with this brief. Dkt. No. 73 (City's Mar. 1 Response).

> overlooked.... It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through—rightly or wrongly.'" *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citations omitted).

*Id.* at 155. Wells Fargo does not even attempt to meet its substantial burden for reconsideration of the Court's well-reasoned Order that denied the motion to dismiss on statute of limitations grounds and that bifurcated discovery on substantive, rather than temporal, grounds.[5] Yet the January 16 Order denied the motion to stay or limit discovery, and it also held that the City properly alleged a continuing violation. These rulings are law of the case and should not be disturbed.[6] *See In re The Harris Agency, LLC*, 462 B.R. 514, 525 (E.D. Pa. 2011) (Brody, J.).

### B. Even If Wells Fargo's Motion Were Proper, Each of Its Arguments Fails.

#### 1. The Time Period At Issue Is Clearly Relevant.

Wells Fargo argues that discovery from the time period prior to 2012 is not relevant to the City's claims because Wells Fargo purportedly changed certain lending practices in 2008. This argument fails for several reasons and, accordingly, the motion should be denied.

First, discovery going back to 2004, rather than 2012, is warranted because the case challenges conduct occurring as of 2004 and continuing through September 2016 (if not beyond). Wells Fargo's argument that an arbitrary discovery cutoff of September *2012* is warranted due to

---

[5] In some respects Wells Fargo's Motion is even more aggressive than the motion on which it lost. Notably absent here is any mention of when the City might receive discovery for the full period of alleged discriminatory conduct. Indeed, in its prior motion, Wells Fargo proposed that the City would receive two years of discovery and, if the City met Wells Fargo's ill-defined threshold, the City could receive full-fledged discovery in the second phase. Wells Fargo no longer proposes that phase. Because the Court has already established the subjects for the two phases of discovery (*i.e.*, non-economic and economic injuries), Wells Fargo's new motion effectively seeks summary judgment—*without any discovery as to the 2004-2012 time period whatsoever*—on the City's claims concerning non-economic injuries.

[6] Wells Fargo's motion to dismiss also premised its arguments on the existence of the lending crisis and its aftermath. Dkt. No. 25-1, at 20. There is nothing new here.

purportedly changed aspects of its lending practices in *2008* (four years before 2012) is untethered to facts or law.

Second, Wells Fargo's own cases confirm that pre-liability[7] discovery in civil rights cases of up to five years is not uncommon. *See P.V. ex rel. Valentin v. School Dist. of Philadelphia*, 2:11-cv-04027, 2012 WL 676993, at *4 (E.D. Pa. Mar. 1, 2012) (relied on by Wells Fargo) (citing cases allowing pre-liability discovery and noting that the plaintiffs were "entitled to some background discovery on the duration of and modifications to Defendants' policies and practices that are at issue in the suit"). Thus, the City's proposed 2004 beginning of the relevant time period, four years prior to the liability period that Wells Fargo's own self-serving declarations purport to establish, is wholly appropriate even under Wells Fargo's formulation of the inquiry.

Third, Wells Fargo mischaracterizes the City's case. This is a discrimination case, and as such requires a comparison of the terms, risks, and costs of loans issued to minority versus white borrowers and an examination of Wells Fargo's continuous and unbroken discriminatory practices. Wells Fargo's motion requires the City's allegations to be miscast as a case solely about the particular form of extreme predatory lending leading up to the financial crisis, a related but independent concept. Indeed, the City's Complaint addresses not only Wells Fargo's historical misconduct but also its much more recent injury-causing practices. *See, e.g.*, Compl., ¶¶ 3 (failure to extend credit to minority borrowers to refinance previously issued discriminatory loans), 58-66 (addressing long-standing systemic unlawful sales practices).

---

[7] Most cases do not involve a continuing violation, so the statute of limitations period and the liability period dovetail. Because of the continuing-violation allegations, the earlier misconduct is within the limitations period. Therefore, allegations relating to practices beginning in 2004 similarly dovetail with the liability period. *See Alpha III, Inc. v. City of San Diego*, 187 Fed. Appx. 709, 710-11 (9th Cir. 2006) (otherwise untimely acts are melded with timely ones to create a single timely allegation under the FHA's continuing-violation provision).

Wells Fargo nowhere acknowledges the basic theory of the City's claims and unsurprisingly its self-serving factual assertions do not answer any relevant argument before this Court. Because the City's case concerns a continuing practice of lending to minority borrowers on less favorable terms as compared to white borrowers, and not based on the use of any specific loan product, Wells Fargo's assertions of "changed practices" are inapposite and do not justify limiting the relevant time period for discovery.

Relatedly, its self-serving declarations and factual assertions are not germane to a comparison of loans issued to similarly situated minority and white borrowers. In one declaration prepared for another case, a long-term Wells Fargo employee confirms that Wells Fargo's loan offerings are centralized.[8] The other declaration is simply a one-page declaration asserting that Wells Fargo changed the compensation of home mortgage consultants. Exhibit 2, Dkt. No. 64-2, *Id*. at ¶¶ 2-3.[9] Overall, Wells Fargo relies on the unremarkable fact—albeit arising out of remarkable circumstances—that, as a result of the worldwide housing crises,[10]

---

[8] *See* Dkt. No. 64-1 (Ex. 1). The employee notes that Wells Fargo discontinued certain loan offerings in 2008. That Wells Fargo was forced to discontinue the extreme versions of some of its most egregious practices (*e.g*., no-document loans) does not speak to the question of whether Wells Fargo continues to issue discriminatory loans.

[9] This declaration also contradicts the allegations (reflecting confidential witnesses and other sources) of improper incentives relating to lender credits and other practices that result in improper lending. Compl., ¶¶ 31-63. In fact, "[a]t all times pertinent to this action, Wells Fargo was guided by its widely criticized philosophy of cross-selling eight products to each customer, commonly referred to as the 'Gr-Eight.' Within Community Bank, "the cross-sell metric represents the relationship of all retail products used by customers in retail banking households.'" Compl., ¶ 59. Notably, this declaration concedes that home mortgage consultants' compensation could still be tied to "the volume (*i.e.*, the number) of loans originated," "the amount financed," and "whether a loan is originated to a current Wells Fargo customer or a new customer." *Id.* at ¶ 3.

[10] The federal Financial Crisis Inquiry Commission, appointed pursuant to Pub. L. No. 111-21, 123 Stat. 5 (2009), concluded that "it was the collapse of the housing bubble—fueled by low interest rates, easy and available credit, scant regulation, and *toxic mortgages*—that was the spark that ignited a string of events, which led to a full-blown [financial] crisis in the fall of 2008." Financial Crisis Inquiry Report xvi (Jan. 2011) (emphasis added), available at

*Footnote continued on next page*

Wells Fargo, like other banks, tightened its lending and had to curb some of the most egregious practices, including in the wake of Dodd-Frank.  Wells Fargo Br. at 5-6.  But this says nothing about Wells Fargo's specific (and ongoing) policies and practices of issuing more costly and worse loans to African Americans and Latinos relative to comparable non-Hispanic whites.  The Eleventh Circuit rejected a similar argument, holding that the existence of a continuing practice of discriminatory lending is not dependent on any particular loan characteristic:

> The City alleges that the Bank has engaged in a longstanding practice of discriminatory lending in which it extends loans to minority borrowers only on more unfavorable terms than those offered to white borrowers. The predatory qualities of the loans have taken slightly different forms over time (e.g., higher interest rates, undisclosed back-end premiums, higher fees, etc.), but the essential discriminatory practice has remained the same: predatory lending targeted at minorities in the City of Miami. The fact that the burdensome terms have not remained perfectly uniform does not make the allegedly unlawful practice any less "continuing." The various instances of discriminatory lending comprise the practice, which continues into the limitations period. At least at the pleading stage, this is enough to plausibly invoke the continuing violation doctrine.

*City of Miami v. Bank of Amer. Corp.*, 800 F.3d 1262, 1285 (11th Cir. 2015).

Finally, this is a case about Wells Fargo in particular, not about the macroeconomic conditions of the last decade.  Wells Fargo alone has warranted intense regulatory scrutiny and censure for specific, continuous, and egregious sales practices.  Compl., ¶¶ 54-63.  While Wells Fargo's declarants claim their sales practices were devoid of improper incentives after a certain date, the materials cited in the City's well-pleaded Complaint tell the opposite story:  that at all relevant times Wells Fargo's sales practices were systematically flawed and improper, and the

---

*Footnote continued from previous page*
http://www.gpo.gov/fdsys/pkg/GPO-FCIC/pdf/GPO-FCIC.pdf.  It is remarkable that Wells Fargo seeks to excuse its misconduct on the basis of a financial crisis that it helped create.

absence of internal controls and flawed sales incentives are neutral practices harming African American borrowers and the City. Compl., ¶¶ 59-66.

Wells Fargo has shown no basis for its arbitrarily proposed discovery start date of 2012. Even if the case alleged conduct during a time period starting only in 2008, discovery (especially data) from before that time would be relevant to show the creation and implementation of policies and the impact of those policies.

### 2. Wells Fargo Does Not Even Attempt to Show Burden.

Even though Wells Fargo cannot show that all discovery before 2012 is irrelevant (indeed, it has not even come close to showing that any discovery is irrelevant), the motion is notable for its lack of assertion of burden. While the City anticipates that Wells Fargo will argue that burden is a secondary condition to relevance, this argument is hollow in light of the demonstrated relevance of discovery pre-dating 2012 in a case where the liability period pre-dates 2012.

The City has been transparent with Wells Fargo that there may well be particular requests or categories of documents which in context—after Wells Fargo has made a good-faith effort to ascertain the existence, location and ease of gathering certain documents—may require the parties to reach agreements as to the temporal scope for such requests. However, *ex-ante*, independent of any particular request (and realizing that Wells Fargo is currently under various litigation holds for various allegations of misconduct and, in the past, that it had to gather documents in connection with multiple regulatory actions), the City believes this is all the more reason why the parties should address discovery issues in the context of specific requests.[11] To

---

[11] It bears noting that the City has made clear to Wells Fargo that loan data, which is principal evidence for establishing discriminatory violations of the FHA in cases like this one, is required and appropriate for the full relevant time period and is proportionate to the needs of the case. To
*Footnote continued on next page*

the extent, in the future, Wells Fargo asserts an objection based on the burden of any specific request, Wells Fargo will need to say something other than discovery should not be produced because Wells Fargo itself deems it irrelevant.  But for now, the City asks that the Court make clear that its Discovery Order, Dkt. No. 60, means what it says:  that the City is entitled to discovery from the full relevant time period to prove its claims of non-economic injuries attendant to Wells Fargo's continuing violation of the FHA from January 2004 and forward.

### 3. Wells Fargo's Case Law Is Inapposite.

For the most part, the scant case law Wells Fargo cites either supports the City's argument[12] or is inapposite.  The principal authority on which Wells Fargo relies confirms the relevance of discovery of earlier events (and, again, here the City is not seeking pre-liability discovery), and also confirms that disputes about temporal scope typically arise in the context of a fuller discovery record.

In *Valentin*, 2012 WL 676993, at *3, the court listed the various rationales for why pre-liability discovery is appropriate, and that the inquiry was a case-by-case analysis.  In the context of that case, and based on an analysis that factored in discussions of burden and specific requests, the court ordered a temporal scope longer than defendants wanted but shorter than plaintiffs wanted.  *Id.* at *3-5.  In *Kuttner v. Zaruba*, 819 F.3d 970 (7th Cir. 2016), an out-of-circuit, individual plaintiff case in a post-summary judgment posture, the Seventh Circuit held that the lower court had not abused its discretion in placing limitations on personnel records.  The case is

---

*Footnote continued from previous page*
date, Wells Fargo has not provided any information about a particularized burden that the City's data request (which Wells Fargo has had since January 26, 2018) imposes.

[12] Wells Fargo cites cases that acknowledge the general principle that broad discovery is appropriate in civil rights cases.  *See* Mot. at 3 (citing *Stewart v. Rutgers, The State Univ*., 120 F.3d 426, 433 (3d Cir. 1997) (internal quotations omitted)).  This and the unobjectionable general proposition that discovery issues are generally fact-specific and within the Court's discretion are not points that the City disputes.

factually and procedurally distinguishable—and also prompted a well-reasoned dissent from then-Judge Posner. *Id*. at 978-980 (lamenting the "arbitrary discovery cut-off date"). Finally, *Jewett v. International Telephone & Telegraph Corp.*, 653 F.2d 89 (3d Cir. 1981), is inapposite because the plaintiff had not established a timely claim, and evidence actually showed that the challenged policy ended before the actionable period. Here, by contrast, Wells Fargo does not even address the challenged policies.

Wells Fargo also cherry picks references from certain other municipal litigation against banks, and fails to disclose that those cases have imposed a different discovery structure than this one. Specifically, Wells Fargo points to an order in the City of Miami Gardens case against Citibank that limited discovery to a four-year statutory period. That order, however, was issued in the context of a decision bifurcating discovery on statute of limitations grounds, *i.e.*, in the first phase, Miami Gardens would receive four years of discovery and, if a continuing violation were demonstrated during those four years, Miami Gardens would receive full-fledged discovery in the second phase. In this case, by contrast, the Court has bifurcated discovery, not on the relevant time period, but rather on the basis of discovery concerning non-economic and economic injuries. *See* Dkt. No. 60. The Citibank decision is inapposite, and Wells Fargo's reliance on other cases is more of its unacknowledged attempt to seek reconsideration. Wells Fargo also ignores that the District Court in the case brought by the City of Oakland permitted certain discovery to be produced unrestricted by time period. *See City of Oakland v. Wells Fargo Bank, N.A.*, 3:15-cv-04321-EMC, Dkt. No. 72 (N.D. Cal. Sept. 2, 2016).

### III.   CONCLUSION

For the reasons set forth above, Wells Fargo's motion should be denied. Any relevance or burden arguments should be addressed in the course of normal discovery practice.

Dated: March 5, 2018                              Respectfully submitted,


                                                  By: */s/ Sherrie R. Savett*
                                                  Sherrie R. Savett (PA ID 17646)
                                                  *ssavett@bm.net*
                                                  Sarah Schalman-Bergen (PA ID 206211)
                                                  *sschalman-bergen@bm.net*
                                                  Patrick F. Madden (PA ID 309991)
                                                  *pmadden@bm.net*
                                                  Christina M. Black
                                                  *cblack@bm.net* (PA ID 323781)
                                                  BERGER & MONTAGUE, P.C.
                                                  1622 Locust Street
                                                  Philadelphia, PA 19103
                                                  Telephone: (215) 875-3000

                                                  Rachel Geman (*pro hac vice*)
                                                  *rgeman@lchb.com*
                                                  Daniel E. Seltz (*pro hac vice*)
                                                  *dseltz@lchb.com*
                                                  John T. Nicolaou (*pro hac vice*)
                                                  *jnicolaou@lchb.com*
                                                  Lieff Cabraser Heimann & Bernstein, LLP
                                                  250 Hudson Street
                                                  8th Floor
                                                  New York, NY 10013
                                                  212-355-9500

                                                  Robert Peck (*pro hac vice*)
                                                  *robert.peck@cclfirm.com*
                                                  CENTER FOR CONSTITUTIONAL
                                                  LITIGATION, P.C.
                                                  One Riverside Park
                                                  50 Riverside Boulevard
                                                  Suite 12A
                                                  New York, NY 10069
                                                  Phone: (646) 649-5575
                                                  Fax: (646) 365-3382

Erwin Chemerinsky (*pro hac vice*)
*echemerinsky@law.berkeley.edu*
SCHONBRUN SEPLOW HARRIS &
HOFFMAN, LLP
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Phone: (310) 396-0731
Fax: (310) 399-7040

Joel Liberson (*pro hac vice pending*)
*joel@taresources.com*
TRIAL & APPELLATE RESOURCES, P.C.
3655 Torrance Blvd., 3rd Floor
Torrance, CA 90503
Phone: (917) 848-3218

Sozi Pedro Tulante, City Solicitor
Marcel S. Pratt, Chair, Litigation Group
Eleanor N. Ewing, Chief Deputy Solicitor
Benjamin H. Field, Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102
(215) 683-5000
*sozi.tulante@phila.gov*
*marcel.pratt@phila.gov*
*eleanor.ewing@phila.gov*
*benjamin.field@phila.gov*

*Attorneys for Plaintiff City of Philadelphia*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am over 18 years of age, and that a true and correct copy of the foregoing **CITY OF PHILADELPHIA'S RESPONSE TO WELLS FARGO'S MOTION TO SET A PHASE ONE DISCOVERY TIME PERIOD** was served via the United States District Court CM/ECF system on all persons requiring notice.

/s/*Sherrie R. Savett*